Filed 7/8/16  Marriage of Seddouki CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of KARIMA and ABDELHAFID SEDDOUKI. | H041711 <br> (Santa Clara County <br> Super. Ct. No. 111FL158306) |
| KARIMA SEDDOUKI, et al., <br><br> Respondents, <br><br> v. <br><br> ABDELHAFID SEDDOUKI, <br><br> Appellant. | |

In this family law matter, we consider the sufficiency of the evidence to support an order modifying child support and temporary spousal support by, in effect, imputing income to appellant Abdelhafid Seddouki (Father).

In 2011, the court ordered Father to pay support in a stipulated amount.  Almost six months later, the court reduced the support order to zero after Father lost his job.  But in 2014, Karima Seddouki (Mother) made a motion to modify support after she discovered Father had been working for almost a year.  Father denied he was employed and objected to proffered evidence of his employment.  Rather than conduct an evidentiary hearing, the court ordered Father to pay support in the amount the parties had stipulated to before Father had lost his previous job.

On appeal, Father challenges the order modifying support on the basis that there is no evidence to support it. Since there is no evidence in the record of Father's income at the time the order was made or evidence that supports imputing income, we will conclude the court erred when it entered its order modifying support. We will therefore reverse the order and remand this matter for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Mother and Father were married in January 1993. They separated in May 2011 after 18 years 4 months of marriage. When they separated, they had three children: a 17-year-old son and 14-year-old twins (a boy and a girl).

On May 16, 2011, Mother filed a petition for dissolution of the marriage. In her income and expense declaration, Mother stated that she worked seven hours per week as a French instructor and tutor, earning approximately $600 per month. She alleged her expenses were $8,237 per month and Father's gross income was $18,200 per month. When they separated, the parties owned two houses in San José—a primary residence and a rental property.

In his income and expense declaration, Father stated that he had worked for Cisco Systems France (Cisco France) as a senior systems engineering manager since December 2007. His job required him to travel to France once a month. Father declared employment income of $13,812 per month and estimated Mother's income at $900 per month. Father declared, among other things, that (1) the parties had $139,482 in stocks and assets that they could easily sell, (2) their rental property generated a net loss of $764 per month, (3) they made approximately $107,000 in the stock market in 2010, and (4) they lost $120,000 in the stock market in 2011.

By stipulation and order filed on August 2, 2011, the parties resolved a number of issues pending trial. Regarding support, the parties agreed that Father would pay $4,098

2

per month in child and temporary spousal support, retroactive to May 20, 2011, until further written agreement of the parties or court order. They also agreed that the support payments would be made "without prejudice as to amount or characterization (child v. temporary spousal support)" and that the court reserved jurisdiction to retroactively recalculate the amount of support from May 20, 2011. The stipulation explained that the parties needed further information regarding Father's income tax liability in France to accurately determine the amount of support. The stipulated amount was based on a Dissomaster calculation, which listed Father's income at $12,300 per month—with estimated French withholdings of $3,000 per month—and Mother's income at $600 per month. The parties agreed: (1) to allow each to withdraw $5,000 per month from their brokerage accounts; (2) to sell the rental property, and (3) to retain a vocational consultant as a joint neutral expert to conduct a vocational evaluation on Mother.

*Father's 2012 Motion to Modify Support and Other Orders*

On February 27, 2012, Father filed a motion to modify his support obligations on the ground that his job with Cisco France was ending the next day. He explained that the job was a three-year assignment and he planned to return to Santa Clara County to immediately look for work. He filed an updated income and expense declaration in which he estimated monthly expenses of $7,950. He also reported a net loss in the stock market of $63,000 for 2011, and he stated that he expected to receive $97 per week in California unemployment benefits.

On March 20, 2012, Mother filed a new income and expense declaration and a response to Father's motion to modify support. Mother reported that she had gotten three additional part-time jobs as a French instructor, was working 37 hours per week, and was earning approximately $476 per week (about $2,000 per month). She also declared monthly expenses of $10,129. She asserted that Father should be able to collect

3

unemployment benefits from France, since he had paid for such coverage. And she advised the court that the parties had recently sold their rental property, which would make additional funds available for both parties. She asked the court to order Father to pay half the cost of the children's health care. She also proposed that the court (1) set support at zero, without prejudice to recalculating the amount, (2) reserve jurisdiction over child support retroactive to February 28, 2012, and (3) issue an employment efforts order.

By stipulation and order filed on March 22, 2012, the court set child support and temporary spousal support at zero effective April 1, 2012, without prejudice, and reserved jurisdiction to modify support retroactive to May 16, 2011. The court also made "Employment Efforts Order[s]" for both parties, which directed them to "make all good faith efforts to seek and obtain gainful employment" and warned that "failure to do so may result in imputation of income for the purpose of determining child and spousal support." (Bold and underlining omitted.) The orders directed the parties, among other things, to notify the opposing party within 48 hours of becoming employed, and to return to court on July 16, 2012, to review their efforts at obtaining employment. The order to Mother was limited to finding work during the summer and increasing her work hours during the school year.

In May 2012, the parties filed a stipulation and order regarding the distribution of assets, including the proceeds from the sale of the rental property ($167,756.93) and funds in their brokerage account. They also agreed to sell the former family home.

In September 2012, the parties filed a stipulation and order regarding the distribution of the proceeds from the sale of the former family home ($309,000). At that time, Father stated he was unable to work or look for work because of medical problems. He provided a "Notice of Work Stoppage" for May 15 through October 22, 2012.

4

In January 2014, DCSS filed a "notice regarding payment of support" in which it stated it was providing current support, support arrears, and medical support services to Mother and the children.

***Mother's 2014 Motion to Modify Support***

On June 30, 2014, Mother filed a motion to modify the support order. In her declaration, Mother stated that she had recently learned that Father was employed by Juniper Networks, Inc. (Juniper Networks). She claimed that when she took the children to the dentist, the dentist's staff advised her that the children had dental coverage through Juniper Networks. Mother declared that Father was not cooperative in providing financial documents and had not given notice of employment to either Mother or her counsel as required by the employment efforts order. She also stated that she had not received any child support for more than two years and that Father had no parenting time with the children. She asserted that Father was making at least $15,000 per month at Juniper Networks.

Mother declared that she made less than $2,000 per month working three part-time jobs and was living on advances of community property funds. She also declared that Father had unilaterally transferred more than $100,000 from the parties' brokerage account without her knowledge or consent. She requested an order for guideline child support and temporary spousal support retroactive to the date Father started working for Juniper Networks, as well as attorney fees. Mother's counsel confirmed—in her declaration in support of the attorney fees request—that Father had not given her notice that he was employed. Mother filed an updated income and expense declaration in which she declared income of $2,497 per month and expenses of $6,694 per month.

In a responsive declaration, DCSS's counsel declared that DCSS had opened its case on December 19, 2013, after receiving a request for support enforcement services

5

from Mother. When it opened the case, DCSS requested a "direct payment statement" from both parties. Mother responded to this request, but Father did not. DCSS set up an account based on the information Mother provided. DCSS also reported that Father owed support arrearages of $4,326.47. DCSS's counsel declared that DCSS had "verified that [Father] is currently employed and has been working with this same employer since June[] 2013." DCSS requested that Father provide an updated income and expense declaration and his three most recent paycheck stubs at the hearing on the motion.

In his responsive declaration, Father objected to the relief requested and asked for a continuance so he could prepare to address Mother's and DCSS's "vague, unsupported allegations." Father objected to Mother's and DCSS's declarations on the ground that "[t]here are no dates, documents, names or any other 'preliminary facts' which are necessary before the statement can be admitted" under Evidence Code sections 400 to 403. Father moved to strike both declarations. He also stated he had "no job with Juniper Networks." He noted that he had propounded discovery, but the responses were due after the date set for the hearing. He also asked for permission to participate in the hearing by telephone since he was living in Morocco.

Father declared that he is a Moroccan citizen, not a citizen of the United States. He had a green card, but it had expired. He stated the parties owed California, federal, and French income taxes for the years 2008 through 2011. He claimed the parties owed more than $400,000 in French income taxes, and $123,352 in unpaid taxes in the United States.

Father also declared that Mother's refusal to pay the taxes owed severely limited his ability to make a living in the United States or France since all of his bank accounts were under levy by the United States and French governments. He claimed that France had already taken $50,000 from his accounts. He also declared that while in Morocco looking for work, "he discovered that he could not return to the U.S. on his Green Card

6

so long as his federal income taxes were unpaid." He stated that he had a job offer from Juniper Networks, but the nonpayment of taxes limited his ability to take that job or any other job in the United States or France. He declared he was living in Morocco with his father and brother, and that he owed them $100,000 for his living expenses.

Father also alleged that Mother makes more than $3,500 per month. He admitted that he had withdrawn $125,000 from the parties' brokerage accounts, but he said he had placed that money in trust with an attorney to protect it from levy and so it could be used to pay taxes. Father asked the court to deny Mother's request for support and to order the parties: (1) to sign and file their federal and state income tax returns and to pay those taxes; (2) to pay their French taxes, if any funds remained; and (3) to pay Father's attorney fees and costs.

Father filed an updated income and expense declaration in which he stated that he had been unemployed since February 2012 and had no income. He claimed expenses of $2,145 per month and more than $600,000 of debt (including the taxes).

### *Hearings on Mother's Motion to Modify Support*

The court heard Mother's motion on August 13, 2014. Mother appeared at the hearing with her counsel. Father was also represented by counsel, but did not personally attend the hearing. The court continued the matter to October 1, 2014, for a long cause hearing. At a trial readiness conference on September 11, 2014, the court denied Father's request for a further continuance and his request to appear by telephone.

At the beginning of the October 1 hearing, Father's attorney advised the court that Father was not present. He filed a new request for Father to appear by telephone. Mother objected to permitting Father to appear by telephone since the primary issue was whether Father was living and working in Santa Clara County. DCSS also objected since the request had not been filed 10 days prior to the hearing.

7

The court asked whether the parties had enough information to permit the hearing to go forward to resolve child support that day. Mother's counsel said she was prepared to present evidence regarding Mother's income for 2013 and 2014. She asserted that DCSS had confirmed that Father was employed by Juniper Networks, that a wage assignment was in effect, and that Mother was receiving payments from the wage assignment. Father's counsel said he intended to object to any efforts by Mother or DCSS to establish that Father was currently employed. Father's counsel stated that Father was in Morocco, was not working for Juniper Networks, and cannot return to the United States unless the back taxes are paid. Father's counsel argued there was enough money being held in trust to cover the federal and state taxes and asked the court to issue an order directing immediate payment of the taxes. He asserted that "the non-payment of taxes [was] not [Father's] fault." The court said the tax issue would have to be handled by an all-purpose judge as it was not before the court in the child support proceeding.

The court inquired whether DCSS had sufficient information to calculate "at least an interim child support order" at that time. DCSS's counsel responded that DCSS had received a wage verification that showed Father's income from June 2013 through February 2014. Without setting forth specific grounds, Father's counsel asked whether he could have "a standing objection to all this." The court responded: "You may have whatever objection you want[.] I'm going to listen to her tell me what we have[.] Your client has not complied with an order of the court so I am going to see if there is anything I can do today to resolve this, . . . ."

DCSS's counsel stated that "in the general course of [its] business," DCSS requested and received wage and insurance verifications from Juniper Networks after discovering that Father was possibly employed there. DCSS had also received a report from the National Directory of New Hires (NDNH) showing Father's employment with Juniper Networks. Counsel explained the under federal law, all employers are required to

8

report new hires to the NDNH—including the new hire's name, social security number, date of birth, and other identifiers—and then to report the person's earnings on a quarterly basis. California imposes similar requirements to report new hires to the Employment Development Department (EDD), which in turn notifies DCSS of new hires. Counsel stated that those reporting requirements had been complied with and were the basis of the department's belief that Father was working for Juniper Networks.

DCSS counsel also stated that DCSS had issued an income withholding order to Juniper Networks in April 2014, and had received payments of $300 toward the support arrearages Father owed every month after that. DCSS had not received any indication from Juniper Networks or the person whose wages were being garnished that there was "some kind of mistaken identification" or other problem. Counsel argued that while Father disputed whether the payments were coming from his paycheck, DCSS "has all the information that this court has used historically to establish income for an individual who[ is] not present in court."

The court observed that (1) a Dissomaster calculation was made in August 2011, when the court ordered support of $4,098 per month, and (2) "retroactivity was reserved to May 16, 2011." The court also noted that the prior support order included $2,815 for child support and $1,283 for temporary spousal support, for total monthly support of $4,098. Mother's counsel explained that the previously stipulated amount ($4,098) "was a compromise of a lot of different issues at the time" to reach a support order while the parties did discovery related to their finances, and that the Dissomaster calculation took into consideration "estimated French withholdings that [did not] exist" and two pieces of real property the parties no longer own.

The court concluded that since child support was being enforced by DCSS, it had two options: (1) reinstate the original order from August 2011 based on Father's failure

9

to appear and cooperate with the process; or (2) take the new information available that day, over Father's objection, to make a new order.

DCSS's counsel observed that both parties' current income appeared to be higher than the incomes used in the August 2011 Dissomaster calculation. According to DCSS records, Father's monthly gross income at Juniper Networks was $15,214, which was more than the $12,300 figure used in 2011. Mother had declared income of $2,497 per month, which was higher than the $600 figure used before. DCSS counsel noted that it had been two years since the court had ordered Father to "diligently seek work," so she suggested a new hybrid calculation based on Father's income in 2011 ($12,300), Mother's current income, and the fact that Mother and Father no longer owned real property.

The court rejected counsel's suggestion as unduly prejudicial to Mother, stating: "[I]f we're going to hold the father to the fact that he has not complied with the seek work order, I don't have any job search efforts and he has not complied with the court's reasonable order that he appear in court today, then we go back to something that was previously calculated and use that[.] [I]f we're going to do a new calculation then we do a new calculation based on information that the Department has been able to obtain through . . . ordinary business channels like we always do in our work here and use the updated information for the incomes of both parties, but to leave his income lower than what it appears it is and put her income higher when he's the one that has not complied with the court's order not being here, I'm not comfortable, so it's either one or the other for me."

Mother's counsel suggested the court could run a new calculation imputing income of $12,300 per month to Father based on his income from Cisco France for the period up until June 3, 2013—the date Father allegedly started at Juniper Networks—and

10

$15,300 per month for income since then. Mother's counsel also suggested using Mother's updated income information, which was available to the court.

Father's counsel objected to using the information provided by DCSS based on Evidence Code sections 400 through 403 (preliminary determinations regarding the admissibility of evidence), 1271 (business records exception to the hearsay rule), and 1280 (official records exception to the hearsay rule). He argued that the information was inadmissible "hearsay upon hearsay," "hearsay of non-governmental entities," and that no "preliminary facts" had been established. He also argued that DCSS needed to have the custodian of records for the employer testify and that it had neglected to bring that person to court.

The court acknowledged that "the evidence ha[d] not yet been presented." But it observed that trials in child support court "are traditionally a little less formal than some of the other trial courts are," and that "it is not uncommon in this court to rely upon information that comes from governmental agencies like the E.D.D. and other sources . . . and especially when there appears to be willful failure to abide by the reasonable orders of the court[.]" The court said it was "uncomfortable" relying on evidence that was "on the edge of admissibility," and it decided that since Father had failed "to abide by the reasonable orders of the court," it would reinstate "the prior order of $4,104 a month"[1] retroactive to May 16, 2011, with $1,289 for temporary spousal support and $2,815 for child support. The order was based on Father's failure to appear and his failure to cooperate. The court denied Father's request to make the order subject to retroactive modification in future proceedings, and it held that since this was guideline support, any future modification would have to be based on a significant change in

---

[1] The prior order was for $4,098 per month. The record does not explain the $6 discrepancy in the amounts.

11

circumstances. The court also declined to hear the tax issues raised in Father's papers since they were outside the scope of Mother's motion.

## DISCUSSION

Father contends the trial court erred by modifying the existing supports orders without substantial evidence, or any evidence, of income from employment or self-employment or a change of circumstances. He also argues the trial court erred by modifying the support orders based on his alleged failure to comply with the employment efforts order since there was no evidence concerning his job search efforts. Finally, he asserts the order modifying support amounts to a sanction without providing him written notice and an opportunity to be heard.

### I. Effect of Mother's and DCSS's Failure to File a Respondent's Brief

Since neither Mother nor DCSS[2] has filed a brief, we may accept as true the facts stated in Father's opening brief. (*Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1077; Cal. Rules of Court, rule 8.220(a)(2).) Nonetheless, Father bears the "affirmative burden to show error whether or not the respondent's brief has been filed." (*Id.* at p. 1078.)

"Failure to file a respondent's brief means that we 'decide the appeal on the record, the opening brief, and any oral argument by the appellant'[3] (Cal. Rules of Court, rule 8.220(a)(2)), examining the record and reversing only if prejudicial error is shown. [Citation.]" (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 334.)

---

[2] DCSS is represented on appeal by the Attorney General's office. In a letter to this court, the Attorney General stated: "After a thorough review of appellant's opening brief and the record in this appeal, this office has concluded the issues raised by appellant in his opening brief will ultimately be determined upon the unique facts of this case, and will not directly impact the statewide child support program. Accordingly, the Attorney General will not be filing a respondent's brief in this matter."

[3] Father has waived oral argument.

12

## II. General Principles Regarding Child Support and Imputing Income

"California has adopted a 'statewide uniform guideline' for determining child support according to a complex formula based on each parent's income and custodial time with the child. (§§ 4050, 4055; *In re Marriage of Smith* (2001) 90 Cal.App.4th 74, 80-81 . . . (*Smith*).)" (*In re Marriage of McHugh* (2014) 231 Cal.App.4th 1238, 1245-1246 (*McHugh*).) Family Code[4] section 4058, subdivision (b) grants the trial court discretion to impute income to a parent based on his or her "earning capacity." That section provides that "[t]he court may, in its discretion, consider the earning capacity of a parent in lieu of the parent's income, consistent with the best interests of the children." (§ 4058, subd. (b).) "Originally, 'the exercise of this discretion was limited to situations where the parent was found to be deliberately shirking family responsibilities by refusing to seek or accept gainful employment. [Citations.] No such limitation exists under the present scheme, however. [Citations.] "While deliberate avoidance of family responsibilities is a significant factor in the decision to consider earning capacity [citation], the statute explicitly authorizes consideration of earning capacity in all cases," consistent with the child's best interests. [Citations.]' " (*McHugh*, at pp. 1245-1246.)

" 'Earning capacity is composed of . . . the ability to work, including such factors as age, occupation, skills, education, health, background, work experience and qualifications . . . and . . . an opportunity to work . . . .' [Citation.]" (*Mendoza v. Ramos* (2010) 182 Cal.App.4th 680, 685, italics added (*Mendoza*).) "The 'opportunity to work' exists when there is substantial evidence of a reasonable 'likelihood that a party could, with reasonable effort, apply his or her education, skills and training to produce income.' [Citation.]" (*Smith*, *supra*, 90 Cal.App.4th at p. 82.)

---

[4] All further statutory references are to the Family Code unless otherwise stated.

"On an application to modify support by imputing income to a parent based on earning capacity, the burden of proof as to ability and opportunity to earn imputed income changes depending on which parent—the payor or the payee—is seeking to change the status quo." (*McHugh*, *supra*, 231 Cal.App.4th at p. 1246.)  When, as here, "the payee parent seeks to increase the amount of court-ordered support by imputing to the payor parent a greater income than the court previously found, the payee parent, as the moving party, bears the burden of proof to show the payor parent *has* the ability and opportunity to earn that imputed income.  [Citation.]" (*Id.* at p. 1247.)

### III.    *Standard of Review*

Case law holds that the standard of review for an order modifying child support is abuse of discretion.  (See e.g., *In re Marriage of Bodo* (2011) 198 Cal.App.4th 373, 384 (*Bodo*), quoting *In re Marriage of Williams* (2007) 150 Cal.App.4th 1221, 1233-1234 (*Williams*); *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 282-283 (*Cheriton*) [the trial court "has 'a duty to exercise an informed and considered discretion' "; child support "is a highly regulated area of the law, and the only discretion a trial court possesses is the discretion provided by statute or rule"].)  In those cases, the court conducted an evidentiary hearing and the parties presented evidence on the support issue. (*Bodo*, at pp. 379-383; *Williams*, at pp. 1228-1231; *Cheriton*, at p. 282.)  The appellant here, however, contends there was *no evidence* to support the trial court's order.  The question whether the trial court may issue an order modifying support in the absence of any evidence presents a question of law, which we review de novo.  (See *Boutte v. Nears* (1996) 50 Cal.App.4th 162, 166 [order that does "not comply with the statutory requirements for child support orders [is] erroneous as a matter of law"]; § 4057 ["admissible evidence" is required to rebut presumption that guideline amount is correct].)

14

## IV. Analysis

There is no evidence in the record of Father's employment or income in 2014 to support increasing support from zero to $4,104. DCSS's counsel made an offer of proof indicating that: (1) DCSS had received notice from NDNH and EDD that Father was working for Juniper Networks; (2) DCSS had received a wage verification confirming Father's employment and the amount earned; and (3) DCSS was receiving payments from Juniper Networks on behalf of Father pursuant to an income withholding order DCSS had issued. All of this, had it been presented to the court, was circumstantial evidence that Father was working for Juniper Networks. But neither DCSS nor Mother presented this evidence to the court.

Once Father disputed the allegation that he was working, it was incumbent on Mother and DCSS to bring forth evidence to prove their contentions. DCSS could have had one of its employees testify regarding the information it had gathered in the normal course of business that circumstantially supported the conclusion that Father was earning $15,300 per month. Alternatively, DCSS and Mother could have presented direct evidence of Father's employment by subpoenaing the custodian of his employment records from Juniper Networks to testify at the hearing.

Instead of receiving evidence about Father's employment and income, the court imposed an order based on the Dissomaster calculation from 2011, effectively imputing income of $12,300 per month to Father. For the court to impute income, Mother or DCSS had the burden to prove that Father had the ability or qualifications to perform a job paying the income to be imputed. (*McHugh*, *supra*, 231 Cal.App.4th at pp. 1246-1247.) But neither Mother nor DCSS presented any such evidence. We acknowledge that when she filed her motion, Mother did not ask the court to impute income to Father. This may explain why neither she nor DCSS presented the necessary evidence.

15

Since there was no substantial evidence to support the trial court's order, we conclude the court erred when it modified the support order in 2014. DCSS's offer of proof suggests it may be able to present evidence that Father was employed starting in June 2013. We will therefore reverse the order and remand this matter to the trial court to conduct a further hearing on Mother's 2014 request to modify support. In light of our conclusion, we need not discuss Father's contention that the court's order amounted to a sanction without proper notice or an opportunity to be heard.

## DISPOSITION

The October 1, 2014 order modifying support is reversed and the matter is remanded to the trial court for further proceedings on Mother's motion to modify support. The parties are to bear their own costs on appeal.

_____

Márquez, J.

WE CONCUR:

_____

Rushing, P.J.

_____

Grover, J.